IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **EDGAR TELLO,** *Plaintiff,* v. **UNITED STATES OF AMERICA,** *Defendant.* | **CIVIL ACTION NO. 5:22-cv-00117-TES** |

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

On July 20, 2020, Neil Holton— a rural route mail carrier for the United States Postal Service ("USPS")—approached Plaintiff Edgar Tello's property in Macon, Georgia, to deliver mail. [Doc. 21-2, ¶¶ 1–2]; [Doc. 26-1, ¶¶ 1–2]; [Doc. 29, Holton Depo., p. 5:17–21]. While doing so, Holton's 1996 Jeep Cherokee shut off. [*Id.*]. After noticing what happened, Plaintiff—who was working in his yard—offered to take a look at the vehicle. [Doc. 26-1, ¶ 3]. Unbeknownst to Holton, Plaintiff, a mechanic, knew about car engines. [Doc. 23, Tello Depo., pp. 18:11—20:6; 26:21—27:19; 29:9–11]; [Doc. 29, Holton Depo., pp. 31:13—32:22].

After Holton moved his car into Plaintiff's yard, Plaintiff connected a diagnostic computer to it so he could try to figure out why it shut off. [Doc. 21-2, ¶ 8]; [Doc. 26-1, ¶ 8]. The diagnostic computer did not issue a specific error code, so Plaintiff continued his

inspection of the vehicle. [Doc. 21-2, ¶ 9]; [Doc. 26-1, ¶ 9]. When Plaintiff opened the hood to examine the engine, the radiator cap blew off, spewing steam and hot water on him. [Doc. 23, Tello Depo., p. 78:2–9]; [Doc. 21-2, ¶ 10]; [Doc. 26-1, ¶ 10]. To relieve the pain from his burns, Plaintiff then went inside his house to take a shower. [Doc. 23, Tello Depo., p. 84:13–21]. After showering, Plaintiff, epitomizing a Good Samaritan, returned outside, put water in the Jeep's radiator and secured the cap before leaving to go to the urgent clinic. [*Id.* at pp. 84:22—85:19]. Plaintiff received treatment for first and second-degree burns. [*Id.* at pp. 112:24—113:5].

On January 14, 2022, Plaintiff filed suit against the United States of America and the USPS in the United States District Court for the Middle District of Florida. [Doc. 1]. On March 17, 2022, the parties consented to changing venue to the United States District Court for the Middle District of Georgia. [Doc. 12]. After discovery, Defendants filed two motions—a Motion to Dismiss the USPS [Doc. 20], and a Motion for Summary Judgment [Doc. 21]. Plaintiff consented to the dismissal and the Court dismissed the USPS as a separate party. [Doc. 25]; [Doc. 30]. Accordingly, the United States remains as the sole Defendant. The Court now reviews the United States' summary-judgment motion.

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A).[1] "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving

---

[1] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Further, where a party fails to address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for the purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for trial. Rather, on summary judgment, the district court must accept as fact all allegations the [nonmoving] party makes, provided they are sufficiently supported by evidence of record. So[,] when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted).

Stated differently, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "The evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. And "if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at 1263.

## **DISCUSSION**

Plaintiff's claims under the Federal Tort Claims Act are governed by the law of the state where the alleged "act or omission (or injury) occurred." *Schippers v. United States*, 715 F.3d 879, 887 (11th Cir. 2013). Because the alleged injury occurred in Macon, Georgia, the Court must apply Georgia negligence law. To state a negligence claim under Georgia law, a plaintiff must establish: "(1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury." *Martin v. Ledbetter*, 802 S.E.2d 432, 434 (Ga. Ct. App. 2017). Plaintiff brings two claims—negligent maintenance and negligent failure to warn. Under each claim, Plaintiff fails to establish any duty that the United States owed him.

Under Georgia law, a legal duty sufficient to support liability in negligence arises by a "duty imposed by a valid statutory enactment of the legislature or a duty imposed

5

by a recognized common law principle declared in the reported decisions of our appellate courts." *Boller v. Robert W. Woodruff Arts Ctr., Inc.*, 716 S.E.2d 713, 716 (2011). Georgia law is also clear that it is not enough to claim a "general duty to the public." *Koutras v. Lazarus*, 179 S.E.2d 106, 108 (Ga. Ct. App. 1970) (internal citations omitted). Instead, a plaintiff must show his injury occurred because of "a duty due him from his injurer." *Id.* Without that duty, a plaintiff cannot recover. *Id.*

Here, Plaintiff seemingly contends that Georgia law imposes a duty on the United States—through Holton—to "exercise reasonable care in the inspection of his machine[.]" [Doc. 26, p. 5 (citing *Fouts v. Builders Transp., Inc.*, 474 S.E.2d 746 (Ga. Ct. App. 1996)]. Plaintiff also argues that Georgia law obligated the United States—through Holton—to warn him of the potential dangers lurking under the Jeep's hood. However, those arguments fail.

    **A.**    **Failure to Maintain**

First, the United States owed Plaintiff no duty to maintain Holton's Jeep. The United States—through USPS—allows rural mail carriers to use their own vehicles to deliver mail in certain parts of the country. [Doc. 28, Hardy Depo., pp. 18:7—20:20]. Those personal vehicles—unlike official USPS-owned vehicles—do not undergo any type of mechanical inspection. Instead, the USPS limits its initial inspection to ensuring

that the vehicle is "a right-hand drive,"[2] and can hold an appropriate amount of mail and packages. [*Id.* at p. 15:11–24]. After that initial inspection, USPS does not inspect the vehicle again. [*Id.* at p. 20:10–20]. In his Response, Plaintiff admits that USPS inspects its government-owned vehicles, but not personal vehicles used to deliver mail. [Doc. 26, p. 6]. Therefore, nothing obligated the United States—through USPS—to inspect Holton's Jeep.[3]

Even accepting that Holton (or the United States) should have inspected his vehicle, the United States still owed no duty to Plaintiff regarding Plaintiff's particular harm. Indeed, the duty to inspect one's vehicle is to ensure that there are no "defects that may prevent its proper operation." *Fouts*, 474 S.E.2d at 757. However, the genesis of this duty comes from *Ragsdale v. Love*, 178 S.E. 900 (Ga. Ct. App. 1935), which explains that any duty on drivers to inspect their vehicles for proper operation exists for the protection of those "lawfully riding in [in the defendant's vehicle]." *Ragsdale*'s progeny mostly applies statutory duties to reach the same result. *See Atlanta Metallic Casket Co. v. Hollingsworth*, 121 S.E.2d 388, 396 (Ga. Ct. App. 1961) (discussing the statutory requirement regarding defective brakes); *Ry. Exp. Agency v. Standridge*, 24 S.E.2d 504,

---

[2] "Right-hand drive" is a vehicle modification used by USPS rural carrier drivers. [Doc. 21-2, ¶ 1]; [Doc. 29, Holton Depo., pp. 16:23—17:6].

[3] Although Plaintiff offers that USPS has a general duty to "inspect" Holton's (and other rural mail carriers' personal vehicles), he doesn't elaborate on that duty. For example, he fails to outline whether this amorphous duty is an annual, monthly, daily, or per-trip duty. He offers nothing to explain who would carry this duty out—postal inspectors, local mechanics hired by the driver or even the driver himself. These omissions doom his generic claim of "duty to inspect."

507 (1943) (same). Even Plaintiff's Response candidly acknowledges that the duty created by *Ragsdale* applies to those "lawfully riding in [a defendant's vehicle]." [Doc. 26, p. 5]. Therefore, by Plaintiff's own rationale, Holton owed no duty to those not riding in his car, including Plaintiff. He doesn't allege that his injuries resulted from his riding in Holton's vehicle. Plaintiff offers no other caselaw which expands the duty beyond those "lawfully riding in the vehicle" or otherwise operating a vehicle on Georgia's roadways.[4]

Instead, Georgia's vehicle-inspection cases align more with drivers who operate vehicles with faulty brakes,[5] worn tires,[6] or improperly-attached equipment.[7] These duties ensure that other drivers on Georgia's roadways are not unwillingly injured by vehicles that have been improperly maintained. *See Queen v. State*, 375 S.E.2d 287, 290

---

[4] Georgia also codified this legal duty in O.C.G.A. § 40-8-7, which reads in pertinent part:
   (a) No person shall drive or move on any highway any motor vehicle, trailer, semitrailer, or pole trailer, or any combination thereof, unless the equipment upon any and every such vehicle is in good working order and adjustment as required in this chapter and the vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person upon the highway.

Although Plaintiff does not rely on § 40-8-7 as a separate basis for a legal duty, it is instructive for the purpose of enacting such a duty. Clearly, Georgia intends the duty of maintenance to protect the "driver or other occupant[s] or any person[s] upon the highway." O.C.G.A. § 40-8-7(a). Plaintiff does not meet any of those definitions. Therefore, the legal duty imposed by Georgia's maintenance progeny does not apply to the United States in this case. *See generally Seaboard Air Line R. Co. v. Hollomon*, 102 S.E.2d 185, 191 (Ga. Ct. App. 1958).

[5] *Fouts*, 474 S.E.2d at 757; *Cruse v. Taylor*, 80 S.E.2d 611 (Ga. Ct. App. 1954).

[6] *Ragsdale*, 178 S.E. at 755.

[7] *Yanzhuo Zhang v. Fieldale Farms Corp.*, No. 3:16-CV-55 (CDL), 2018 WL 10733624, at *1 (M.D. Ga. July 20, 2018).

8

(Ga. Ct. App. 1988) (discussing the purpose of Georgia's criminal liability statutes for failing to maintain a safe vehicle as "promot[ing] safety on the roadways of this state."). Neither Holton nor Plaintiff were confused about the Jeep's operating ability—clearly something caused the vehicle to be disabled in Plaintiff's yard. Plaintiff knew the Jeep wasn't operating correctly, but he still offered to help. That is wholly different from an opposing driver who assumes the safe operation of another vehicle as they drive down the road. Therefore, even accepting Plaintiff's arguments regarding a duty to maintain a safe vehicle, no such duty applies here.

    **B.**     <u>**Failure to Warn**</u>[8]

The duty to warn "depends upon [the] foreseeability of the danger, the type of danger involved, and the foreseeability of the user's knowledge of the danger." *Niles v. Bd. of Regents of Univ. Sys. of Ga.*, 473 S.E.2d 173, 175 (1996) (internal citations omitted). Indeed, the "duty to warn of the presence of defects or dangers is predicated upon superior knowledge[.]" 65 C.J.S. Negligence § 76.[9] Put another way, if the defendant doesn't have "superior knowledge of any defect of which he should have warned," there can be no liability. *Anderson v. Saffold*, 213 S.E.2d 127, 129 (Ga. Ct. App. 1975).

---

[8] Plaintiff failed to respond to the United States' arguments regarding any supposed duty to warn Plaintiff of the radiator cap's condition. And duty is one of the four elements that Plaintiff needed to prove to survive summary judgment. *Davis v. Scott*, 502 S.E.2d 332, 333 (Ga. Ct. App. 1998).

[9] *See also* 65 C.J.S. Negligence § 75 ("[The] duty to warn is predicated upon the understanding that individuals who have superior knowledge of dangers posed by a hazard must warn those who lack similar knowledge[.]").

Here, no one disputes that Holton had no idea that the radiator cap would blow off. So, if Holton didn't know, then it clearly wasn't foreseeable to him—or, more importantly, the United States. That is enough to extinguish any duty to warn.

Plaintiff argues that Holton knew about the potential dangers because he previously added radiator fluid to the reservoir. [Doc. 26, p. 7]. However, that is not evidence of constructive or actual knowledge of a risk of harm. Indeed, Holton admitted that he is not a trained mechanic. [Doc. 29, Holton Depo., p. 34:9–13]. Holton also testified that no engine light indicators actively displayed a warning. [*Id.* at p. 29:4–23]. Holton further testified that the radiator cap never came loose before the incident. [*Id.* at p. 64:21–23]. Even Plaintiff's own diagnostic computer showed nothing was wrong with the car so that it gave no warning. [Doc. 23, Tello Depo., p. 77:16–23].

Plaintiff relies on the fact that Holton's vehicle "sputtered" and shut off a few random times over the preceding few days to establish knowledge. However, that does nothing to connect the requisite dots. Just because Holton's vehicle "sputtered" and shut off a few times doesn't reasonably put him on notice something was wrong with the radiator cap or otherwise let him know that it could blow at any second.

To be clear, Plaintiff admitted that Holton didn't know about the dangerous condition. [Doc. 23, Tello Depo., pp. 107:25—108:2 (Q: "[How] do you know that [Holton] knew of the dangerous condition and failed to warn you of it?" A: "He didn't.")]. Plaintiff also admitted that Holton didn't know the radiator cap was going to

10

spew hot steam and water onto Plaintiff. [*Id.* at p. 107:8–11 (Q: "[] How do you know that [Holton] knew the radiator cap was going to release hot water on you?" A: "He did not know.")].

Holton did warn Plaintiff of what he actually knew—that his Jeep had been shutting down and causing problems. [*Id.* at 97:15—20 (Q: "[D]id [Holton] ever say what was going on with the car other than it was stalling?" A: "No, he said, 'Oh it broke down **again**.'") (emphasis added)]. Therefore, Holton told Plaintiff everything he knew, and Plaintiff still chose to offer to help and take a look under the hood. Holton—based on Plaintiff's own testimony—had no way to know that the radiator cap would blow off and injure Plaintiff.

Plaintiff's reliance on *res ipsa loquitur* is also misplaced, as it provides no basis for a legal duty. *Res ipsa loquitur* is "an evidentiary doctrine that permits a trier of fact to infer a defendant's negligence from unexplained circumstances." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1180 (11th Cir. 2020).[10] To invoke *res ipsa loquitur*, a plaintiff must show that he suffered an injury that "(1) was caused by an agency or instrumentality within the defendant's exclusive control, (2) ordinarily does not occur in the absence of someone's negligence, and (3) was not due to any voluntary action or contribution on

---

[10] Indeed, Georgia cases refer to *res ipsa loquitur* as "merely a rule of evidence[.]" *Parker v. Dailey*, 177 S.E.2d 44, 46 (Ga. 1970). Therefore, it cannot impose a legal duty. *See Stanley v. Garrett*, S.E.2d 890, 894 (Ga. Ct. App. 2020) (restating that a legal duty may arise from "a valid legislative enactment, that is, by statute, or be imposed by a common law principle recognized in the caselaw.").

11

his part." *Ga. Farm Bureau Mut. Ins. Co. v. Pawlowski*, 643 S.E.2d 239, 242 (Ga. Ct. App. 2007). At the outset, it is clear that *res ipsa loquitur* should be "applied with caution," and only in "extreme cases." *Sheats v. Kroger Co.*, 784 S.E.2d 442, 447 (Ga. Ct. App. 2016). Further, *res ipsa loquitur* should not be used in cases "where there is no fair inference that the defendant was negligent." *Hosp. Auth. of St. Mary's v. Eason*, 150 S.E.2d 812, 816 (Ga. 1966).

But, "*res ipsa loquitur* leads only to the conclusion that the defendant has not exercised reasonable care, and is not itself any proof that he was under a duty to do so." *Tesoriero*, 965 F.3d at 1180 (internal citations omitted). Put another way, "it does not permit the imposition of liability without fault, and therefore does not help to establish the duty of care, which is essential to every negligence case." 1 Stuart M. Speiser, *The Negligence Case: Res Ipsa Loquitur* § 3:1, at 90 (1972). Indeed, the doctrine does not apply unless the alleged negligence is "within the scope of the defendant's duty to the plaintiff." Restatement (Second) of Torts § 328D (Am. Law Inst. 1965).[11] Therefore, Plaintiff cannot use *res ipsa loquitur* to establish a legal duty.

---

[11] Many other courts reached the same conclusion. *See Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 901 (4th Cir. 2003) (concluding that *res ipsa loquitur* "does not eliminate a plaintiff's obligation to prove that the defendant owed a duty to the plaintiff in the first place."); *Till v. Dolgencorp, LLC*, 801 F. App'x 428, 431 (7th Cir. 2020) (finding "the existence of a duty of care is a separate and threshold question" that must be established before applying *res ipsa loquitur*); *Lowe v. United States*, No. 1:11-CV-02745-JEO, 2014 WL 2740580, at *3 (N.D. Ala. June 17, 2014) ("The doctrine of *res ipsa loquitur* does not eliminate the requirement that a defendant must owe a duty to a plaintiff before he can be found negligent for his actions."); *Schulze v. United States*, No. 18-CV-00130-GKF-JFJ, 2019 WL 1526877, at *5 (N.D. Okla. Apr. 8, 2019) (holding that because res ipsa loquitur is an only evidentiary rule, "there must be a duty owed by the defendant to the plaintiff."); *Schaffner v. Cumberland Cnty. Hosp. Sys., Inc.*, 77 N.C. App. 689, 698 (1985) (*"Res ipsa* does not operate to impose liability when the defendant does not owe plaintiff a duty of care.").

Accordingly, Plaintiff failed to carry his burden of establishing a duty owed him by the United States. *See Clark, Davis & Easley Ins. Agency, Inc. v. Tile Tech., Inc.*, 459 S.E.2d 450, 452 (Ga. Ct. App. 1995) ("It is axiomatic that without establishing a duty owed, one cannot recover for a breach of that duty.").

## CONCLUSION

In all, Plaintiff's case would require the Court to rewrite USPS's policies regarding personal-vehicle drivers. That is not the role of this Court, nor is this the proper case for such an examination. The United States—through its agency, USPS, and its driver, Holton—did all it was required to do. While Plaintiff's injuries are unfortunate, the "mere fact that [he] sustained an injury does not establish negligence and therefore does not justify a trial." *Persinger v. Step By Step Infant Dev. Ctr.*, 560 S.E.2d 333, 336 (Ga. Ct. App. 2002).

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 21]. The Clerk of Court is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant and **CLOSE** this case.

**SO ORDERED**, this 27th day of January, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**